(Cuyahoga County Common Pleas.)

THE AKRON, BEDFORD & CLEVELAND RAILROAD COMPANY v. THE VILLAGE OF BEDFORD.

---

(1). Where a street railway company, having accepted an ordinance from municipal authorities providing the terms and conditions under which it may construct and operate a line of street railway, including all necessary switches, turnouts, etc., and where acting under such ordinance, the company proposes to construct as part of its road, a switch necessary to the reasonable and proper operation of its road, and the city authorities, without legal proceeding declaring the switch to be unnecessary, without legal steps for a total or pro tanto forfeiture of the franchise granted, refused to permit the railway company to build the switch by arresting the working men employed therefor, and defend an application for an injunction upon the grounds that the switch is not necessary, and that the plaintiff has not complied with the terms of the franchise. Held: First, such action on the part of the municipality in thus constituting its officers judges of law and fact and determining the necessity of the switch, and in enforcing its decree by force, is clearly an unwarranted interference with the contract rights of the street railway company, and such action is a trespass upon its

property and an impairment of its franchise, for which the law furnishes no adequate remedy, and the company is entitled to an injunction restraining the municipal authorities from interfering with the laying of the switch.

Second, it is no reason for refusing such relief that the railway company has, not complied with the terms of the franchise. If the street railway company fails to perform its contract obligation, the city must seek its legal remedy. It can not be permitted to take the law into its own hands.

Third, the court finds that the length of the switch as proposed to be constructed by the Street Ry. Co. is unreasonable, and reduces the length to what the court considers reasonable dimensions.

(Opinion rendered February 7, 1899.)

---

ONG, J.

This case is before the court on application of the plaintiff for a permanent injunction against the defendant, the Village of Bedford, to prevent the village authorities from interfering with the plaintiff in the laying and constructing of a street railway switch in one of the main streets of the village and through which the main line of the plaintiff's railway passes.

The facts very briefly are as follows:

Sometime in December, 1894, the plaintiff, a corporation organized for the purposes of constructing and operating an electric railway frcm the city of Cleveland to the city of Akron through the counties of Cuyahoga and Summit, cbtained from the village council of the defendant, the Village of Bedford, permission to lay and maintain its track and line of railway through the village; the grant being made about the date I have mentioned. Among other provisions in the ordinance or grant to the street railway company is the following: "Permission is hereby granted to the Akron, Bedford & Cleveland Railroad Company, its successors and assigns, to construct, maintain and cperate an electric railroad with single or double tracks, and with all the necessary switches, side-tracks, turn-cuts, poles, wires, and other appliances, in, along and over the following described streets in the village cf Bedford, namely, commencing at a point cn the northerly line of the village where Main street intersects the graded and

macadamized road between Bedford village and Cleveland; thence southerly on and along Main street to the junction or intersection of Main street and Union street; thence southerly on and along Union street to the iron bridge which spans Tinker's creek; thence commencing at a point on Union street 250 feet southerly of said iron bridge, continuing on and along said Union street to the junction or intersection of Union street and Northfield road; thence southerly on and along the Northfield road to the corporation line, connecting at the northerly terminus of said described road, with a road to be constructed by said company, running northerly to the city of Cleveland.''

The plaintiff, having constructed its railway line from the city of Cleveland to the city of Akron through the village of Bedford and upon the streets designated in the grant, sometime in November last determined that it was necessary for the proper use and operation of its railway, to have a switch or side track connected with its main line in the streets of the village of Bedford, and, as it alleges and avers, undertook to construct such switch in accordance with the provisions of the grant to which I have referred. The plaintiff says that while it was in the exercise of the right thus granted it by the village council of the village of Bedford, and while in strict conformity to the requirements of the grant, the defendant, by its officers, agents and employes, threatened and intends by force to prevent this plaintiff from completing said work, and wrongfully refuses to permit the plaintiff to proceed therewith; that such interference and refusal are wholly wrongful being in violation of the express rights granted to this plaintiff by the ordinance. And it asks that the defendant, its agents and servants and employes, be perpetually enjoined from interrupting, interfering with, and preventing plaintiff from laying and constructing the turn-out or switch-track in the manner provided by the ordinance heretofore referrred to.

To the petition, the defendant, the village, files an answer and, after ad-

mitting the corporate capacity of both plaintiff and defendant, says that the right under which the plaintiff claims to operate its road and construct the switch or turn-out named in its petition, is by virtue of certain pretended ordinances passed by the village council.

It further alleges that the pretended ordinances provided the method and condition in which the tracks of plaintiff should be constructed, the manner in which the surface of the street should be left, kept and maintained, and the conditions upon which the traffic of said road should be conducted. It also admits that the plaintiff is operating an electric railway along and through the streets of the village as designated in the ordinance, with the necessary poles, wires, switches, turn-outs, and other appliances therefor; that on or about the 7th of November, the plaintiff began to disturb the main street in the village of Bedford at a point within five feet north of Columbus street; that the persons, so disturbing the street as aforesaid, were arrested upon affidavit and warrant and brought before the mayor of the village; and it admits that it intends, by force if necessary, to prevent any disturbance of its streets by the laying of switches or otherwise, by the plaintiff or its employes, under its pretended rights so to do, and that it intends by force to prevent the plaintiff from entering upon and completing any work or to proceed with the present work which it has commenced as aforesaid in the streets of the village of Bedford.

It further says that at the time the plaintiff claimed its right to construct and operate a street railway in the village of Bedford, plaintiff had no road constructed at any point, and that there was at that time no electric or other street railway or any part thereof within the village of Bedford or adjacent thereto.

It further says that no public notice of the application for the passage of the ordinance was given by the clerk of the village of Bedford, in any newspaper, and that no agreement was made by the plaintiff or between the

[COPYRIGHT, 1899, BY CARL G. JAHN.]

plaintiff and the defendant to carry passengers upon the proposed railroad at the lowest rate of fare. That there had not been obtained previously to the passage of the ordinance, the written consent of a majority of the property owners upon each of the streets or part thereof, of the line proposed.

It further says that the defendant upon the passage of the ordinance did not take a vote by the yeas and nays and record the same on the journal of the council. That all its acts in that respect were contrary to the provisions of the statute in such case made and provided.

Again, it says that the plaintiff has failed to comply with the terms and conditions of said pretended ordinance; that it has been running its cars at a greater rate of speed and in excess of the speed permitted by the council of the village. That the plaintiff has at different times operated its road by steam as a motive power instead of electricity. That it has not complied with the conditions of the ordinance in maintaining and keeping the surface of the street at the level of the street at grade with the top of the rails of its street railway line. That it has failed to construct macadam pavement five feet in width upon each side of the road-way. That it has failed to construct and maintain its road in such manner as not to interfere with the use of the street and public travel thereon. And for that reason, it says that the relief sought for by the plaintiff ought not to be granted in this case.

To this answer the plaintiff files a reply and, after admitting the conceded allegations of both petition and answer, it denies each and every other allegation in the defendant's answer contained, and sets up affirmatively that it had obtained grants from the commissioners of Cuyahoga county to construct and maintain its road through the county of Cuyahoga.

The case was heard by the court on the testimony of both parties; the court holding, however that the main question of fact being as to whether or not the proposed switch or turn-out proposed by the plaintiff was neces-sary; whether the proposed switch is a reasonable one or a reasonable exercise of the right granted by the village of Bedford if such right in law has been granted to the plaintiff.

It is contended by the plaintiff that the proposed switch is necessary for the proper operating of its railway and that the switch proposed to be constructed is a reasonable one or rather a reasonable exercise of the right granted, a switch or turn-out some 800 feet in length. It is also contended by the plaintiff, that all the questions raised by the answer of the defendant as to its failure to comply with the conditions of the ordinance in the construction and maintenance of not only its main line but its switch, its proposed switch and turnout is not and can not be made available as a defense to this application in law, for the reason that the grant itself provides for the remedy in the event the plaintiff shall fail in any particular to comply with the conditions of the grant as set forth therein; and especially is this contended for under the following provisions of the ordinance: Under section 9 of the ordinance, which provides for the paving, for maintaining the road-bed of the street by the company, and the maintaining and giving of the space between the rails and one foot on the outside of either rail, and for the changing of material, and changing of the grade, and all such things that are required to be done, the ordinance provides that it shall all be done by the company (the plaintiff) to the satisfaction of the village council, or if not so done, then the village may do and perform such work and may recover from the plaintiff the plaintiff's proportionate share of the cost of such work in complying with the conditions of the ordinance in that respect.

And, again, in section 19, it is provided that within ten days after the passage of these ordinances said company shall pay to the village of Bedford the costs of publishing these ordinances and shall file with the clerk of said village an acceptance in writing by said company of the grants and

privileges herein conveyed, and agreement to comply with and perform all the terms and conditions of these ordinances and before entering upon the work of construction of said railroad, said company shall deposit with the village of Bedford a bond for the sum of five thousand dollars, signed by said company and at least two individuals, resident of Cuyahoga county who shall be satisfactory to the council of the village, which bond and sum stipulated shall be forfeited as liquidated damages, should said company fail to comply with the terms of this grant "as hereinafter' it reads but unquestionably intended to read "as hereinbefore contained".

The question, therefore, arises squarely in this case whether, under such a grant, if breach be made thereof by the railroad company, and the village or municipal authorities enforce a compliance of the terms and conditions of the ordinance by resorting to force, or putting in operation the criminal law of the municipality or of the the state.

In this case the defendant contends that the plaintiff, the railroad company, having failed to comply with the conditions of the ordinance, running its cars in violation of the provisions of the ordinance, it has and it will continue to prevent the construction of the switch or turn-cut, by force and by arresting the employes and agents of the plaintiff. And, of course, if it may do this and thus compel the plaintiff to comply with the conditions of the ordinance in the manner that it may see fit and require, it may prevent it from operating its cars, or it may do any other thing by force that is necessary to compel a compliance with the conditions of the grant.

We see no difference between this case and the two cases heretofore heard in this court—and one by this branch of the court.

The case of the Cleveland City Railway Company v. The City of Cleveland, decided by this branch of the court in 1897 (Ohio Nisi Prius Reports, vol. IV., page 21), the syllabus reads as follows:

"Where a street railway company, having accepted an ordinance from municipal authorities providing the terms and conditions under which it may construct and operate a line of street railway, including all necessary switches, turn-outs, etc., and where acting under such ordinance, the company has constructed as part of its road, a switch necessary to the reasonable and proper operation of its road, and the city authorities, without legal proceeding declaring the switch to be unnecessary, without notice to the company, and without legal steps for a total or pro tanto forfeiture of the franchise granted, tore up the switch and refused to permit the railway company to replace it, and defend an application for an injunction upon the grounds that the switch is not necessary, and that the plaintiff has made an improper use of it.

"Held: First, such action on the part of the city in thus constituting its officers judges of law and fact and determining the necessity of the switch, and in enforcing its decree by force, is clearly an unwarranted interference with the contract rights of the street railway company, and such action is a trespass upon its property and an impairment of its franchise, for which the law furnishes no adequate remedy, and the company is entitled to an injunction restraining the municipal authorities from interfering with the re-laying of the switch, and from again removing it except as the result of due process of law.

"Second, it is no reason for refusing such relief that the railway company has, at times, made an improper use of the switch. Municipal corporations are not exempt from the obligation which rests upon all persons and corporations, to secure redress for wrongs by due process of law, and to refrain from arbitrary interference with the rights of others; and if the street railway company fails to perform its contract obligation, the city must seek its legal remedy. It can not be permitted to take the law into its own hands."

We see no difference in principle between the doctrine enunciated in

the case to which I have just referred and that which the defendant in this case seeks to enforce or pleads in his answer to defeat the application of plaintiff for an injunction. For instance, it is the claim of the defendant all the way through its answer, that the plaintiff has not complied with the terms and conditions of the ordinances; that the ordinances were not properly and lawfully passed by the defendant itself, and that, notwithstanding that, whilst the railroad company has gone on, constructed its railroad and maintained the same through the village of Bedford under the grant since 1894 or 1895, it is now contended by the defendant that because the franchise was not regularly or lawfully granted and because the plaintiff has failed to comply with the conditions of the contract or franchise and because it continues to violate the conditions of the contract, it, the defendant, will by force prevent the plaintiff from constructing any switches or turn-outs in the village of Bedford until at least the plaintiff has so complied.

Hence, I may again inquire as in the Woodland avenue case, who has determined that the plaintiff in this case was not complying with its contract? What court has heard and determined that it had and still is making breach of the conditions of the grant? What tribunal has, upon evidence and a day in court, ever determined those acts?

The only determination of that question has been by the village of Bedford or by some officer of the village of Bedford, the other party to the contract or grant itself; and the village of Bedford in this case, though a party to the contract, proposes to declare the breach on the part of the plaintiff, fixes the penalty, and enforces its decree, and, while thus holding the plaintiff by the throat, so to speak, proposes to defeat the plaintiff of relief in a court of equity by saying that the plaintiff has not clean hands and has not, in its judgment, done equity although it is asking for no relief.

Again, we repeat the holding made

in the Woodland avenue case: If the village authorities of Bedford, or individuals, may thus act and interfere with the construction of a switch or turn-out by force without appealing to either law or equity, it would not be long until serious conflict would arise and the law-preserving power of the village of Bedford would soon be involved in attempting to quiet or overpower those who were seeking to enforce their property rights against the unlawful force of the village itself. So that we still think that neither upon principle at law or in equity can this defendant be heard to say that the application in this case should be defeated because the plaintiff had not complied with the conditions of the ordinances or is still operating its road in violation thereof.

In this case it will be observed that the village provided in the main what the remedy should be, and required, before the grant went into operation a bond of the plaintiff in the sum of five thousand dollars for the performance of all the conditions and terms of the grant. And we are, therefore, clearly of the opinion that if breaches of the conditions and terms of the contract by the plaintiff have been made, or it is still operating its road in violation of the terms and conditions of the ordinances, then the village of Bedford as well as all other parties must resort to the courts for its legal or equitable redress and not take the law in its own hands and seek to enforce its supposed rights by force. When it itself undertakes to determine the question of its rights it is itself perpetrating an unlawful act. On the other hand, the equity powers of the court are broad enough and active enough to grant the relief sought in this case in so far as the law of the case is concerned.

This brings the court to the consideration of the question of fact which I think may be properly raised by this answer in this proceeding, is the switch, about to be constructed by the railroad company necessary and otherwise a reasonable exercise of the right granted under the ordinances?

This question, I think, the defend-

ant may be properly heard on under the issues made in this case although the application made by the plaintiff is the result of a wrongful act on the party of the defendant.

Considerable proof was offered tending to show the necessity of the switch at the place where the plaintiff attempted to construct the same in the village of Bedford; and the court is unable to say that such switch is not necessary to the proper operating of the road.

But I am disposed to think that a thousand feet, if that is the distance, is unreasonable, and that from all the facts in this case, traffic of the road and the distance between switches located where the switch is in the village of Bedford, that a switch eight hundred feet long would be a reasonable exercise of the right granted.

Now having found both the law and fact with the plaintiff in this case, for the reason indicated, the prayer of the petition in this case will be granted and the temporary injunction heretofore granted will be made perpetual; to all of which exceptions on behalf of defendant will be noted, notice of appeal given, and bond fixed at the sum of two hundred dollars.

Kline, Carr, Tolles & Goff, for Plaintiff.

F. J. Wing, for Defendant.